No. 24-3868

# In the United States Court of Appeals for the Sixth Circuit

---

DAYTON AREA CHAMBER OF COMMERCE, ET AL.,

*Plaintiffs-Appellants,*

v.

XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF THE U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES, ET AL.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of Ohio, Western Division
(No. 3:23-cv-00156) (The Hon. Michael J. Newman)

---

## BRIEF OF AMICI CURIAE KENTUCKY CHAMBER OF COMMERCE AND OTHER STATE AND LOCAL CHAMBERS SUPPORTING APPELLANTS

---

JEFFREY B. WALL
HUTCHINSON C. FANN
WILLIAM E. MCCARTER
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Washington, DC 20006
(202) 956-7500

*Counsel for Kentucky Chamber of Commerce*

## CORPORATE DISCLOSURE STATEMENT

Amici make the following disclosures under Sixth Circuit Rule 26.1:

1.    Are amici subsidiaries or affiliates of a publicly owned corporation?

No.  The Kentucky Chamber of Commerce and other amici state and local chambers are not subsidiaries or affiliates of any other corporation but are nonprofit trade groups that have no shares of securities that are publicly traded.

2.    Is there a publicly owned corporation, not a party to the appeal or an amicus, that has a financial interest in the outcome?

None known.

/s/ Jeffrey B. Wall
Jeffrey B. Wall

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................3

I.    THE DECISION BELOW IS WRONG....................................3

    A.    The District Court Erred In Holding That The Dayton Chamber Does Not Meet The Germaneness Requirement..........3

    B.    The District Court Effectively Rewrote The Germaneness Requirement. ...............................................................7

II.    THE DECISION BELOW THREATENS THE ABILITY OF STATE AND LOCAL ASSOCIATIONS TO REPRESENT THEIR MEMBERS. ......................................................12

CONCLUSION....................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Am. Physicians & Surgeons, Inc.* v. *Tex. Med. Bd.*,
   627 F.3d 547 (5th Cir. 2010)..................................................................2, 5

*Ass'n of Am. Physicians & Surgeons* v. *FDA*,
   13 F.4th 531 (6th Cir. 2021) ................................................................4, 15

*Bldg. & Const. Trades Council of Buffalo, N.Y. & Vicinity* v. *Downtown
   Dev., Inc.*, 448 F.3d 138 (2d Cir. 2006)..................................2, 4, 5, 8

*Career Colls. & Schs. of Tex.* v. *U.S. Dept. of Educ.*,
   98 F.4th 220 (5th Cir. 2024) ......................................................................9

*Chamber of Com. of the U.S.* v. *CFPB*,
   No. 4:24-cv-213, 2024 WL 5012061 (N.D. Tex. Dec. 6, 2024) ......................11

*Dayton Area Chamber of Com.* v. *Becerra*,
   No. 3:23-cv-156, 2024 WL 3741510 (S.D. Ohio Aug. 8, 2024) ............*passim*

*FDA* v. *All. for Hippocratic Med.*,
   602 U.S. 367 (2024) (Thomas, J., concurring) ...................................9

*Fednav, Ltd.* v. *Chester*,
   547 F.3d 607 (6th Cir. 2008)....................................................................5, 9

*Humane Soc'y of the U.S.* v. *Hodel*,
   840 F.2d 45 (D.C. Cir. 1988)..............................................................4, 8, 9

*Hunt* v. *Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977)..........................................................................3, 10, 11

*Int'l Union, UAW* v. *Brock*,
   477 U.S. 274 (1986)......................................................................................12

*Memphis Ctr. for Reproductive Health* v. *Slatery*,
   14 F.4th 409 (6th Cir. 2021) (Thapar, J., concurring in part and dissenting
   in part)............................................................................................................9

*Nat'l Lime Ass'n* v. *EPA*,
233 F.3d 625 (D.C. Cir. 2000)..............................................................4

*Presidio Golf Club* v. *Nat'l Park Serv.*,
155 F.3d 1153 (9th Cir. 1998)..............................................................4

*United Food & Com. Workers Union Loc. 751* v. *Brown Grp., Inc.*,
517 U.S. 544 (1996)............................................................................3

**Statutes**

42 U.S.C. § 1320f ............................................................................1, 12

**Other Authorities**

8D Charles Alan Wright et al., *Federal Practice and Procedure* § 8345
(4th ed. 2024) ....................................................................................6

Chris Kershner & Steve Stivers, *Ohio Businesses Cannot Stand for
Government Overreach*, Dayton Daily News (June 25, 2023).....................7

Dayton Area Chamber of Com., *Dayton Area Chamber of Commerce Joins
Ohio, Michigan, and U.S. Chambers in Lawsuit Against Federal
Government Overreach* (June 9, 2023)..................................................7, 12

Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of
American Constitutional Law* (2018)......................................................13

## INTEREST OF THE AMICI CURIAE

The Kentucky Chamber of Commerce is the premier business association in the Commonwealth of Kentucky, representing 3,800 member businesses from family-owned shops to Fortune 500 companies, who employ more than half of the Commonwealth's workforce.  The Kentucky Chamber, through its partnership with more than 80 local chambers across the Commonwealth and formidable grassroots network, serves as a champion for business-friendly policies that will benefit all Kentuckians.  The Kentucky Chamber also provides its members with resources, advocacy, and training to enhance business operations.

The Kentucky Chamber views litigation as an important way it can represent its members' legislative and regulatory interests.  The questions at issue in this appeal—the limits of associational standing—are thus of great importance to the Kentucky Chamber.

The appendix lists 148 additional state and local chambers that join this brief.  Each is an association that represents the business community in a particular geographic area, but that geographic focus does not limit the association's ability to advocate for the interests of members who may be headquartered elsewhere or to advocate for policies that will be generally

beneficial to the business community or economic climate. National policies can have real importance to state and local chambers, which have a clear interest in being able to challenge such policies.[*]

---

[*]     No party's counsel authored this brief in whole or in part, and no one other than amici contributed money intended to fund preparing or submitting the brief. The parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2) and (4)(E).

# INTRODUCTION

In 2022, Congress passed the Inflation Reduction Act. That statute represents a broad assertion of governmental power. Among other things, the statute delegates power to the Secretary of Health and Human Services to negotiate the prices for certain prescription drugs with select drug manufacturers. 42 U.S.C. § 1320f(a). A manufacturer is on the hook for steep monetary penalties if the company fails to reach an agreement with the Secretary. This is true even if the Secretary is holding out for a significant discount.

The Dayton Area Chamber of Commerce—joined by the Ohio, Michigan, and United States Chambers of Commerce—filed suit. The Dayton Chamber represents pharmaceutical manufacturers directly subject to this price-control regime. But the Dayton Chamber's suit could not even get off the ground because the district court concluded that the Dayton Chamber lacked associational standing. In the court's view, this lawsuit is not "germane" to the Dayton Chamber's mission. That is a puzzling result. Courts have repeatedly acknowledged that the "[g]ermaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose." *Ass'n of Am. Physicians & Surgeons, Inc.* v.

*Tex. Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010) (quoting *Bldg. & Const. Trades Council of Buffalo, N.Y. & Vicinity* v. *Downtown Dev., Inc.*, 448 F.3d 138, 148 (2d Cir. 2006)).

The Dayton Chamber clears that low bar for at least two related reasons. First, some of its members are directly affected by the Drug Price Negotiation Program. Second, the mission of the Dayton Chamber is to "improve the region's business climate . . . through public policy advocacy." Dkt. 29-2, Kershner Decl. at PageID 171 ¶4. The Program harms "the region's business climate" by adversely affecting many businesses in the region. For either and both of those reasons, the Dayton Chamber has standing to pass through the courthouse doors. The district court erred by fashioning a physical-footprint requirement that is at odds with binding precedent and that threatens the ability of regional organizational plaintiffs to effectively represent members who are headquartered out of state and who may join multiple organizations to advance their local and national interests. This Court should reverse the judgment below.

## ARGUMENT

## I.    THE DECISION BELOW IS WRONG.

The doctrine of associational or representational standing allows a membership association to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt* v. *Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  The second prong of that test is not demanding and the Dayton Chamber satisfies it.  The district court concluded otherwise because it misunderstood how the germaneness requirement works and took too narrow a view of the Dayton Chamber's purpose and the interests that the Dayton Chamber may protect in litigation.

### A.    The District Court Erred In Holding That The Dayton Chamber Does Not Meet The Germaneness Requirement.

1.    In *United Food & Commercial Workers Union Local 751* v. *Brown Group, Inc.*, the Supreme Court explained that the germaneness requirement is designed to ensure "that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary."  517 U.S. 544, 555-556

(1996).    Likewise, this Court has recognized that the germaneness requirement is keyed to ensuring simply that the plaintiff will prosecute its case with sufficient "adversarial vigor" to satisfy Article III's case-or-controversy requirement.  *Ass'n of Am. Physicians & Surgeons* v. *FDA*, 13 F.4th 531, 542 (6th Cir. 2021).

Lower courts have understood the germaneness requirement as an "undemanding" standard that is satisfied when there is "mere pertinence" between the litigation at issue and the organization's purpose.  *Nat'l Lime Ass'n* v. *EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000); *see Presidio Golf Club* v. *Nat'l Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1998) (same); *Bldg. & Const. Trades Council of Buffalo, N.Y. & Vicinity* v. *Downtown Dev., Inc.*, 448 F.3d 138, 148 (2d Cir. 2006) (same).  In *Humane Society of the United States* v. *Hodel*, the D.C. Circuit concluded that germaneness is a "modest but sensible" requirement that screens out only cases where there would otherwise be a "wholesale mismatch between litigation topics and organizational expertise" or where "association leaders [are] abusing their offices."  840 F.2d 45, 57-58 (D.C. Cir. 1988).  The Second Circuit has likewise emphasized the Court's deliberate use of the adjective "germane" rather than another phrase such as

"at the core of" or "central to" that might call for a more stringent review. *Bldg. & Const.*, 448 F.3d at 148.

Because germaneness is not meant to be a stringent requirement, courts have found it satisfied by organizational plaintiffs in a wide variety of contexts. This Court has held, for example, that a shipping association can challenge permit requirements because it "promote[s] the interests of its shipowner and agent members in maritime transportation." *Fednav, Ltd.* v. *Chester*, 547 F.3d 607, 615 (6th Cir. 2008). Comparable examples abound in sister circuits. The Second Circuit, for instance, has held that a labor union can enforce environmental laws that improve its members' "working conditions," *Bldg. & Const.*, 448 F.3d at 149, while the Fifth Circuit has held that a national medical association can sue a state medical board to protect doctors from "governmental abuse," *Tex. Med. Bd.*, 627 F.3d at 550 n.2.

The common lesson of these cases is that an organization has associational standing to sue when its suit plausibly furthers the general interests that individual members sought to vindicate by joining the organization in the first instance. Because litigation is costly and resources are often scarce, it is unsurprising that associations typically file lawsuits only to further their missions. Thus, any question about associational standing

5

ordinarily centers on the other prongs of the *Hunt* test, not germaneness. Indeed, a leading treatise notes that "[t]he second element seldom presents a serious issue." 8D Charles Alan Wright et al., *Federal Practice and Procedure* § 8345 (4th ed. 2024).

2.      Here, the interests that the Dayton Chamber seeks to vindicate in this action are germane to its purpose. Businesses join the Dayton Chamber because of its broad commitment to "improv[ing] the region's business climate." Dkt. 29-2, Kershner Decl. at PageID 171 ¶4. To further that commitment, the Chamber must wear multiple hats simultaneously. At times, it serves as a resource for local businesses looking to learn best practices and improve internal operations. Other times, it is a lobbying force pushing state and federal lawmakers to enact pro-competitive and pro-business policies. And yet other times, the Dayton Chamber pursues its agenda through litigation challenging unlawful governmental actions. *See id.* Each of those efforts contributes to fostering a "business friendly legislative and regulatory environment that encourages the growth and economic prosperity of businesses." *Id.* at ¶6.

With respect to this litigation specifically, the President and CEO of the Dayton Chamber warned that the Drug Price Negotiation Program would

6

"hamper[] innovation and jeopardize[] free enterprise across business as a whole." Chris Kershner & Steve Stivers, *Ohio Businesses Cannot Stand for Government Overreach*, Dayton Daily News (June 25, 2023), http://tinyurl.com/4fvkedsk. It was natural for the Dayton Chamber to be concerned because it includes "various members across the supply chain that are impacted by [the Program]." Dayton Area Chamber of Com., *Dayton Area Chamber of Commerce Joins Ohio, Michigan, and U.S. Chambers in Lawsuit Against Federal Government Overreach* (June 9, 2023), https://tinyurl.com/yw26zycp. Bringing this action was entirely consistent with the Dayton Chamber's 118-year record of advocating for the business community.

### B. The District Court Effectively Rewrote The Germaneness Requirement.

The district court reached a contrary conclusion because it asked the wrong question. The court did not ask whether the lawsuit's subject matter is relevant to the organization's purpose. Instead it asked whether the Dayton Chamber is representing the interests of members who have a significant physical and commercial presence in the Dayton area. The court thus wrongly introduced a novel geographic requirement into the associational-standing

analysis.  The court also took far too narrow a view of the interests that the Dayton Chamber is entitled to protect in the courts.

1.    The germaneness inquiry is tied to ensuring that a "modicum of concrete adverseness" exists between the plaintiff-association and the defendant, *Hodel*, 840 F.2d at 58, and courts should therefore analyze whether the lawsuit, if successful, furthers the type of interest that the members of an organization expect the organization to vindicate.  *Bldg. & Const.*, 448 F.3d at 149.  Nothing more, nothing less.  The district court veered off course by asking an entirely different question:  namely, whether the Dayton Chamber had identified affected members who have a significant physical and commercial presence, such as a corporate headquarters, in the Dayton area. *Dayton Area Chamber of Com.* v. *Becerra*, No. 3:23-cv-156, 2024 WL 3741510, at *5 (S.D. Ohio Aug. 8, 2024).  The court concluded that this lawsuit could not be germane to the Dayton Chamber's purpose because the association could not "directly connect[] the interests" of its identified members "to the business climate in the Dayton area."  *Id.*

The district court did not cite any other decisions to apply the germaneness analysis that way, nor are amici aware of any court to ask whether an association's affected members are located or headquartered in

the same jurisdiction as the association.  To the contrary, the germaneness analysis is keyed to the relationship between the litigation's *subject matter* and the organization's purpose.  *See Hodel*, 840 F.2d at 58.  For that reason, courts can analyze an association's standing without inquiring into the residency of its members.  *See Fednav, Ltd.*, 547 F.3d at 615 (finding that a shipping association could challenge a permit requirement on behalf of its members with no inquiry into the corporate citizenship of the members); *see also Career Colls. & Schs. of Tex.* v. *U.S. Dept. of Educ.*, 98 F.4th 220, 234 (5th Cir. 2024) (trade association representing career schools could challenge federal regulations with no inquiry into where its members resided).

The district court adopted a "narrow interpretation" of the case law based on its own doubts about associational standing as a matter of first principles.  *Becerra*, 2024 WL 3741510, at *5; *see id.* at *7 (citing *FDA* v. *All. for Hippocratic Med.*, 602 U.S. 367, 400-401 (2024) (Thomas, J., concurring)).  But "[t]he structure of our judicial system mandates" that lower-court judges adhere faithfully to Supreme Court precedent, *Memphis Ctr. for Reproductive Health* v. *Slatery*, 14 F.4th 409, 456 (6th Cir. 2021) (Thapar, J., concurring in part and dissenting in part), and here the district court should have asked

simply whether "the interests [the Dayton Chamber] seeks to protect are germane to the organization's purpose," *Hunt*, 432 U.S. at 343.

Logic does not offer any more support than precedent for the district court's innovation. There is no necessary relationship between a member's brick-and-mortar locations and the lawsuit's germaneness to an organization's interest. Suppose Ohio passes a law forbidding certain types of alcohol sales and associations in both Cincinnati and Columbus sue. The Cincinnati association identifies a large liquor store in Covington, Kentucky as an injured member because that store primarily sells to customers in Ohio (which is why it joined the Cincinnati group in the first place, to protect its retail interests). The Columbus association identifies a small liquor store that makes limited local sales. On the district court's view, those associations should be treated differently for standing purposes, even though they are equally representing their members' interests.

One other court has already rejected the district court's approach to germaneness. In a lawsuit brought by the Fort Worth Chamber of Commerce challenging a CFPB rule in the Northern District of Texas, the government argued that the Fort Worth Chamber lacked standing because it did not identify any members that were headquartered in Fort Worth. The district

court rejected the government's argument because there was an obvious, tight link between the Fort Worth Chamber's mission of promoting a "thriving business climate" in the region and the lawsuit's interest in protecting members affected by the challenged rule. *Chamber of Com. of the U.S.* v. *CFPB*, No. 4:24-cv-213, 2024 WL 5012061, at *4 (N.D. Tex. Dec. 6, 2024).

2.    The Dayton Chamber not only seeks to protect the specific interests of its pharmaceutical members; it also seeks to protect the broader interests of the Dayton business community, and those interests are likewise "germane to the organization's purpose." *Hunt*, 432 U.S. at 343. The district court reasoned that the Drug Price Negotiation Program's "potential downstream effects" on the Dayton economy are "far too speculative to connect this lawsuit to the business climate of the Dayton area." *Becerra*, 2024 WL 3741510, at *5. Here too, the district court erred. Whether an alleged harm is speculative goes to injury-in-fact, not germaneness. The point of germaneness is to ensure that the association will diligently pursue its case. The Dayton Chamber showed that it will.

Specifically, the Dayton Chamber showed that the Program threatens to harm the Dayton economy. As the Dayton Chamber documented, the Program's price-fixing provisions reach every pharmaceutical manufacturer

11

in the country.  42 U.S.C. § 1320f.  Thus, even if the Secretary only begins with the largest pharmaceutical companies, the Program will eventually affect the entire industry, whether directly or indirectly.  The Program also risks disrupting the supply chains for many of the Dayton Chamber's members.  *See* Dayton Area Chamber of Com., *Dayton Area Chamber of Commerce Joins Ohio, Michigan, and U.S. Chambers in Lawsuit Against Federal Government Overreach* (June 9, 2023), https://tinyurl.com/yw26zycp ("The Dayton Area Chamber of Commerce has various members across the supply chain that are impacted by this federal law.").  Regulating the prices that pharmaceutical companies can charge will inevitably have spillover effects, whether in research and development, investment, or retail.  There is no apparent reason why those effects would not be felt in the Dayton area.

## II.    THE DECISION BELOW THREATENS THE ABILITY OF STATE AND LOCAL ASSOCIATIONS TO REPRESENT THEIR MEMBERS.

The Supreme Court has observed that associational standing is important because organizational plaintiffs can possess three "special features" which are "advantageous both to the individuals represented and to the judicial system as a whole."  *Int'l Union, UAW* v. *Brock*, 477 U.S. 274, 289 (1986).  Those features are (1) the "pre-existing reservoir of expertise and

capital . . . relating to the subject matter of the lawsuit," (2) the ability to attract like-minded members who can pool resources together to "create an effective vehicle for vindicating" their shared interests, and (3) the accountability to these members that will "provide some guarantee that the association will work to promote [the members'] interests." *Id.* at 289-290.

Those advantages are especially important in a federalist system like ours because regulated parties often must navigate a patchwork of overlapping and inconsistent rules and regulations issued by state and federal policymakers. *See* Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* (2018). Consider any national corporation that, although headquartered in a particular state, operates across a substantial number (or all) of the 50 states. Such a company must comply with each state's and locality's unique rules—anything from zoning to tax law—while also complying with federal law. And even large companies find it difficult and costly to monitor regulatory developments across a host of jurisdictions.

For that reason, local associations like the various Chambers of Commerce have become critical resources for their members. These associations can leverage their expertise and familiarity with local dynamics

to be effective while spreading the costs of advocacy across their members. Thus, it is now entirely ordinary for companies to be active members of many different associations that represent their interests in discrete ways. Some organizations will train attention and husband resources to lobby for a specific mission, while others—like the Dayton Chamber—will have more holistic agendas focused on a favorable regulatory environment for members. This constellation of associations allows companies to further their interests across the multiple jurisdictions in which they operate.

The district court's rule threatens to frustrate these important goals by requiring associations to bring suit only in jurisdictions where their members are headquartered. Again, that rule bears no logical relationship to the germaneness requirement. Suppose that the city council in Ann Arbor is considering whether to regulate vacation-rental services. Presumably national vacation-rental services (and national hotel chains) have an interest in that issue, but on the district court's approach it would be of no moment even if every one of those companies is a card-carrying, dues-paying member of the Ann Arbor Chamber. The court's test is disconnected from the role of the germaneness requirement, which is to ensure that the association

possesses sufficient "adversarial vigor to litigate." *Ass'n. of Am. Physicians & Surgeons* v. *FDA*, 13 F.4th at 542.

Worse still, the district court's rule would disproportionately handicap associations like many of the amici which are located in jurisdictions where significant businesses are unlikely to be headquartered. Indeed, this case is a poster child for the unequal outcomes that this rule would generate. Under the district court's theory of associational standing, the only appropriate venues for this lawsuit were California, Illinois, Massachusetts, and Washington. *Becerra*, 2024 WL 3741510, at *5-6. To be sure, other associations with other pharmaceutical members might be able to sue in additional venues, but the point remains that litigation will be concentrated in the places where industries are headquartered—even if the effects of governmental regulation are felt everywhere.

\*     \*     \*

The Dayton Chamber clearly documented how the Program, which threatens to overhaul the country's pharmaceutical and healthcare industries, would materially impact the Dayton economy in ways both direct and indirect. Under well-settled law, that should have been enough.

15

## CONCLUSION

The Court should reverse the judgment below.


Dated:    December 30, 2024


Respectfully submitted,

/s/ Jeffrey B. Wall
JEFFREY B. WALL
HUTCHINSON C. FANN
WILLIAM E. MCCARTER
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Washington, DC  20006
(202) 956-7500
wallj@sullcrom.com

*Counsel for the Kentucky Chamber of Commerce*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this brief complies with the length limitation of Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 3,956 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Century Expanded BT 14-point font.

Dated:   December 30, 2024

*/s/ Jeffrey B. Wall*
Jeffrey B. Wall

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2024 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

Date: December 30, 2024

*/s/ Jeffrey B. Wall*
Jeffrey B. Wall

# APPENDIX

## List of Amici Curiae

Aiken Chamber of Commerce
Alaska Chamber
Arizona Chamber of Commerce and Industry
Arkansas State Chamber of Commerce and Associated Industries of
      Arkansas
Barrow County Chamber of Commerce
Bay City Chamber of Commerce and Agriculture
Bellingham Regional Chamber of Commerce
Bend Chamber of Commerce
Berkeley Chamber of Commerce
Billings Chamber of Commerce
Brainerd Lakes Chamber of Commerce
Brookville Area Chamber of Commerce
Buffalo Niagara Partnership
Burlington Chamber of Commerce
Burlington County Regional Chamber of Commerce
Butler County Chamber of Commerce
Cadillac Area Chamber of Commerce
Canton Regional Chamber of Commerce
Carlsbad Chamber of Commerce
Casper Area Chamber of Commerce
Champaign County Chamber of Commerce
Chillicothe Ross Chamber of Commerce
Cocoa Beach Regional Chamber of Commerce
Colorado Chamber of Commerce
Columbus Area Chamber of Commerce
Columbus Chamber of Commerce
Commerce Lexington
Covington Chamber of Commerce
Del Rio Chamber of Commerce
Detroit Regional Chamber
Dixon Chamber of Commerce & Main Street, Inc.
Fountain Hills Chamber of Commerce
Frankfort Area Chamber of Commerce

Frederick County Chamber of Commerce
Garfield Park Chamber of Commerce
Georgia Chamber of Commerce
Greater Akron Chamber
Greater Cheyenne Chamber of Commerce
Greater Cleveland Partnership
Greater Flagstaff Chamber of Commerce
Greater Irvine Chamber of Commerce
Greater Louisville Inc. the Metro Chamber of Commerce
Greater Niles, MI Chamber of Commerce
Greater North Dakota Chamber
Greater Omaha Chamber
Greater Owensboro Chamber of Commerce
Greater Pensacola Chamber of Commerce
Greater Rochester Chamber of Commerce
Greater Taylor Chamber of Commerce
Greater Vancouver Chamber
Greater Wausau Chamber of Commerce
Greater Winston Salem, Inc.
Green Oaks, Libertyville, Mundelein, Vernon Hills (GLMV) Chamber of
    Commerce
Greenwood Chamber of Commerce
Gwinnett Chamber of Commerce
Habersham County Chamber of Commerce
Hampton Roads Chamber
Harrisburg Regional Chamber & Capital Region Economic Development
    Corporation
Illinois Black Chamber of Commerce Corporation
Illinois Chamber of Commerce
Indiana Chamber of Commerce
Jefferson City Area Chamber of Commerce
Jeffersontown Chamber
Jessamine County Chamber of Commerce
Kalispell Chamber of Commerce
Kansas Chamber of Commerce
Lake Barkley Chamber
Lake Havasu Area Chamber of Commerce
Lander Chamber of Commerce

Lansing Regional Chamber of Commerce
Little Miami River Chamber Alliance
Little Rock Regional Chamber
Long Beach Area Chamber of Commerce
Longview Chamber
Loudoun County (VA) Chamber of Commerce
Madison County Chamber of Commerce
Maryland Chamber of Commerce
McLean County Chamber of Commerce
Meridian Chamber of Commerce
Metro South Chamber of Commerce
Metrocrest Chamber of Commerce
Minnesota Chamber of Commerce
Mississippi Economic Council - The State Chamber
Missouri Chamber of Commerce and Industry
Mobile Chamber
Montana Chamber of Commerce
Moses Lake Chamber of Commerce
Mountain Lakes Chamber of Commerce
Nacogdoches County Chamber of Commerce
New Jersey State Chamber of Commerce
New Mexico Chamber of Commerce
Newnan-Coweta Chamber
Nordonia Hills Chamber of Commerce
Norman Chamber of Commerce
North Carolina Chamber
North Country Chamber of Commerce
Northern Ohio Area Chambers of Commerce
Pennsylvania Chamber of Business and Industry
Perry County Chamber of Commerce
Pickerington Area Chamber of Commerce
Pocatello-Chubbuck Chamber of Commerce, Inc.
Queen Creek Chamber of Commerce
Queens Chamber of Commerce
Rancho Cordova Area Chamber of Commerce
Rock Springs Chamber of Commerce
Roseburg Area Chamber of Commerce
Rowan Chamber of Commerce

Santa Rosa Metro Chamber
Schuylkill Chamber of Commerce
Sedro-Woolley Chamber of Commerce
SnoValley Regional Chamber of Commerce
Somerset County PA Chamber
South Bend Regional Chamber
South Carolina Chamber of Commerce
Southern Chester County Chamber of Commerce
Southern Ohio Chamber Alliance
Springboro Chamber of Commerce
St. Charles Regional Chamber
State Chamber of Oklahoma
Tampa Bay Chamber
The Business Council of NY State, Inc.
The Chamber Grand Forks East Grand Forks
The Chamber of Commerce serving Middletown, Monroe, Trenton (OH)
The Columbia Montour Chamber of Commerce
The Greater Pigeon Forge Chamber of Commerce
The Greater Springfield Chamber of Commerce
The Huber Heights Chamber of Commerce
Thomson McDuffie Chamber of Commerce
Tipp City Chamber of Commerce
Toledo Regional Chamber of Commerce
Trotwood Chamber of Commerce
Troy Area Chamber of Commerce
Tucson Metro Chamber
Twin Falls Area Chamber of Commerce
Union County KY Chamber of Commerce
Vail Valley Partnership
Vegas Chamber
Washington County Chamber of Commerce
West Virginia Chamber of Commerce
Western DuPage Chamber of Commerce
Williamsport/Lycoming Chamber of Commerce
Winnetka-Northfield-Glencoe Chamber of Commerce
Worthington Area Chamber
Wyoming Chamber of Commerce
Wyoming State Chamber of Commerce

Yorba Linda Chamber of Commerce
Youngstown/Warren Regional Chamber
Zanesville-Muskingum County Chamber of Commerce